FILED

2006 Jan-10 PM 01:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| SANDRA E. DAY, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] CV-04-CO-00196-W |
| | ] |
| SHELTON STATE COMMUNITY COLLEGE, | ] |
| *et al.*, | ] |
| | ] |
| Defendants. | ] |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendants Shelton State Community College ("Shelton State"), Tom Umphrey ("Dr. Umphrey"), and James Rogers' ("Dr. Rogers")  motion for summary judgment, which was filed on October 4, 2005.  (Doc. 28.)  Plaintiff Sandra Day has sued Defendants for allegedly retaliating against her in violation of her free speech rights guaranteed by the First and Fourteenth Amendments and 42 U.S.C. § 1983 ("§ 1983").  (Doc. 1.)  The issues raised in Defendants' motion for summary judgment have been briefed and are now ripe for decision.   Upon full

consideration of the legal arguments and evidence presented, Defendants'
motion is due to be granted.

II.     Facts.[1]

Shelton State is a public two-year community college located in
Tuscaloosa, Alabama.  (Doc. 29, p. 2.)  Dr. Umphrey was the President of
the school from 1988 until 2000, when he retired.  *Id.*  He was succeeded by
Dr. Rogers, who previously served as Assistant to the President under Dr.
Umphrey.  *Id.*

Ms. Day was first employed by Shelton State in 1979 as a receptionist
for the Junior College dean.  She was placed on Salary Schedule E at Grade
6.  *Id.*  Although her job title changed to Faculty Secretary, Junior College
Division, in 1983, she remained on Salary Schedule E at Grade 6.  *Id.* at 3.
Ms. Day's job assignment changed several times between 1983 and 2000, but
she remained on Salary Schedule E at Grade 6 the entire time.  *Id.*  During

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts
claimed to be undisputed, their respective responses to those submissions, and the
Court's own examination of the evidentiary record.  All reasonable doubts about the
facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks
Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for
summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r
U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

the course of her tenure with Shelton State, Ms. Day signed yearly employment contracts which spelled out the terms of her employment, including salary.

In January 1992, Ms. Day was subpoenaed to give a deposition in a lawsuit involving Drake State Technical College and David Freeman, a former employee of Shelton State. *Id.* at 12. The case involved money owed to Freeman by Drake State for consulting services he had rendered. *Id.* Shelton State was not a party to that action, and neither Dr. Umphrey nor Dr. Rogers were present at the deposition. *Id.* at 13. Even though Dr. Rogers drove Ms. Day to the deposition, they did not discuss her testimony along the way. Defendants allege that they did not know the content and substance of Ms. day's testimony until the filing of this lawsuit. *Id.*

In September 1992, Plaintiff says that she spoke to the F.B.I. concerning its investigation into the misuse of federal funds received by Shelton State. Ms. Day testified that she spoke with agent Gerald Kelly on different occasions throughout the 1990's. *Id.* Plaintiff never told anyone at Shelton State that she spoke with agent Kelly, but she alleges that

Defendants retaliated against her for her cooperation with the F.B.I.'s investigation.

In August 1992, Plaintiff was reassigned from Telecommunications to Student Services and was told that she could either accept the job or be fired.  (Doc. 32, p. 22.)  Around October 24, 1994, Plaintiff was moved to International Students and Senior Adult Services.[2]  *Id.*  Ms. Day alleges that

_____

[2]Plaintiff alleges that this transfer occurred just after Jeannetta Hargrow and Humphrey Lee were indicted in an F.B.I. investigation in Waco, Texas.  (Doc. 32, p. 22.) Defendants have moved to strike any and all references to the Waco investigation, as well as paragraphs 3, 5, 9, 13, 15, 16, and 17 of Plaintiff's Declaration and Plaintiff's Exhibits 8, 18, 19, 22, 23, 24, 25, and 26.  (Doc. 37.)

First, paragraphs 3 and 5 are to be stricken because they both contain conclusory statements regarding the reasons why Plaintiff was reassigned or denied salary increases. Second, paragraph 9 is due to be stricken because it mentions the indictment of Ms. Hargrow and Mr. Lee in the Waco investigation, which is irrelevant to the facts in question.  Third, paragraphs 13, 15, and 17 each contain inadmissible hearsay in the form of conversations Ms. Day's supervisors relayed to her after they had them with Dr. Umphrey and Dr. Rogers, and, therefore, are due to be stricken.  Even though the statements made by Dr. Umphrey and Dr. Rogers are admissions by party opponents, Ms. Day's declaration is still hearsay because she is relating a conversation that occurred between her and her supervisor.  In order to be admissible under Rule 56(c) for the purposes of summary judgment, an "out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose." *Macuba v. DeBoer*, 193 F.3d 1316, 1322-25 (11th Cir. 1999).  *See also Soles v. Board of Comm'rs of Johnson County*, 746 F. Supp. 106, 110 (S.D. Ga. 1990) (citing *Munoz v. International Alliance of Theatrical Stage Employees*, 563 F.2d 205, 207 n. 1 (5th Cir. 1977)) (holding that "[i]n determining admissibility under Rule 56, the same standards apply as at trial.").  However, paragraph 16 is not hearsay because it does nothing more than state that Ms. Day was in the room during the phone conversation between Dr. Wynn and Dr. Rogers.  Such a statement is based upon her own personal knowledge, and is, therefore, admissible.  Fourth, Plaintiff's Exhibits 8, 18, and 19 are to be stricken because Plaintiff never produced these documents to Defendants despite

the new position was housed in an isolated building that was located in an

unsafe area known for its high crime rate. *Id*. On August 27, 1995, Ms. Day

was reassigned to the Water Center in Moundville, Alabama, which is

located approximately sixteen miles away from the Skyland Campus of

Shelton State. *Id*. at 22-23. Plaintiff's doctor then sent a letter to Dr.

Umphrey requesting that he reconsider the transfer due to Plaintiff's heart

---

repeated requests that she do so. Furthermore, Exhibits 8 and 18 consist of a trial transcript for Dr. Ted Spring's civil trial against Dr. Umphrey and a letter from Dr. Spring to the school, which constitutes inadmissible hearsay and is irrelevant to the case at bar because only the allegedly retaliatory acts that took place after January 30, 2002, will survive the statute of limitations and Dr. Umphrey retired in 2000. Fifth, Exhibits 25 and 26 also relate to Dr. Spring's trial and verdict and are irrelevant to Ms. Day's action against the defendants in this case; therefore, they are due to be stricken from the record. Finally, Defendants argue that Exhibits 22, 23,and 24 should be stricken because Plaintiff has yet to authenticate them. The Court has not relied in any way upon these documents in considering Defendants' motion for summary judgment; however, they are internal Shelton State documents that could be identified by a witness at trial if they were to be introduced as evidence. Documents must be properly authenticated to be considered at summary judgment, unless it is apparent that they are capable of being reduced to admissible, authenticated form at trial. *See U.S. Aviation Underwriters, Inc. v. Yellow Freight System, Inc.*, 296 F. Supp. 2d 1322, 1327 n. 2 (S.D. Ala. 2003); *Bozeman v. Orum*, 199 F. Supp. 2d 1216, 1222 (M.D. Ala. 2002).

Even though an affidavit, or declaration contains some inadmissible material, the Court is not required to strike the document in its entirety. *See Southern Concrete Co. v. United States Steel Corp.*, 394 F. Supp. 362, 380 (N.D. Ga. 1975), *aff'd*, 535 F.2d 313 (5th Cir. 1976). The Court may strike, or disregard, the inadmissable material and consider the rest of the document. *See Lee v. National Life Insurance Co.*, 632 F.2d 524, 529 (5th Cir. 1980). For these reasons, Defendants' Motion to Strike is due to be and hereby is granted in part and denied in part. Paragraphs 3, 5, 9, 13, 15, and 17, as well as Exhibits 8, 18, 19, 25, and 26 are due to be and hereby are stricken from the declaration.

condition and need to be closer to a health facility. *Id.* She was reassigned approximately one month later. *Id.* (*See also* Doc. 35, p. 11.) Around August 28, 1996, Plaintiff was again reassigned to New Options and International Students, which are both located off campus and isolated from the rest of the school. *Id.* Ms. Day was not provided with a computer at New Options, and there was no equipment in the trailer for International Students. *Id.* When she requested supplies from her supervisor, Dr. Bryan Melton, she alleges that he told her that Dr. Umphrey said that there was "no way in hell" that she would get any equipment and that he was glad she did not have any. *Id.* at 24.

Ms. Day was eventually assigned to work for Dr. Cordell Wynn, Dr. Joan Kempster, and Dr. Carole Hill. *Id.* Plaintiff believes that her responsibilities increased along with the reassignment, and in October 2001, Dr. Wynn requested that Dr. Rogers give Plaintiff a raise because of her assignment as his secretary. *Id.* at 24-25. On September 4, 2002, Dr. Wynn again requested a raise for Ms. Day, but he was not informed that he had to detail her duties and responsibilities when he made his recommendation. *Id.*

Shelton State must comply with the State mandated guidelines for paying its employees.  (Doc. 29, p. 3.)  Effective September 1, 2000, the entire Alabama Post-Secondary Education System, including Shelton State, changed the way it classified Schedule E employees, such as Ms. Day.  *Id*. The revisions were implemented "to promote uniform salary schedule placement for jobs within the Alabama College System by classifying positions on five different levels based upon job responsibility, skills, supervisory responsibility, and responsibility for coordination, organization and facilitation."  *Id*. at 4.  Plaintiff was grand-fathered into the new schedule so that she retained the same salary she was holding at the time the E schedule revisions were enacted.  *Id*.  Her position and salary at the time of the implementation qualified her for placement at level 5, Grade 6. *Id*.  To further comply with the new guidelines, Ms. Day's title was changed from "Secretary" to "Clerk I," effective September 1, 2000.  *Id*.  To receive a classification above Level 5, Grade 6, an employee must demonstrate increased responsibilities from those contained in the job description for her position.  *Id*. at 5.  In addition to receiving a grade and level classification, employees are classified on the new E salary schedule at different "steps"

based upon the number of years the employee has served in public education. *Id.* Advancement in steps after initial placement is based solely on years served in public education. *Id.* at 6.

Under this system, Defendants contend that in 1998 Plaintiff reached the maximum salary possible as an employee at her level because she reached twenty years of service. *Id.* During the 1998-99 school year, Ms. Day's salary was $26,875, and for the 2000-01 school year her salary increased to $27,950 due to a cost-of-living adjustment. *Id.* On September 1, 2002, Plaintiff received another cost-of-living increase, raising her salary to $28,790. *Id.* at 7. *(See also* Doc. 32, p. 8.) The State legislature did not approve a cost-of-living adjustment for the years 1999, 2001, 2003, or 2004. *Id.*

Since October 1995, over thirty support staff positions at Shelton State have become available, and Plaintiff has submitted an application for only one position, Secretary for Public Relations, in March 1996. *Id.* at 8. Since August 2000, twelve support staff positions have become available. They were each posted internally for five days on the Jobs Board on all campuses and announced on the voice mail system so that employees could be given

preference.  *Id.*   Each posting included detailed requirements for the position, including the applicable salary schedule.  *Id.*  Shelton State has filled each of the vacancies with the best-qualified applicants.  *Id.*  (*See also* Doc. 32, p. 12.)

In order to have a position at Shelton State reclassified so that an employee qualifies for a higher salary, the supervising dean normally recommends the reclassification to the Reclassification Committee.  *Id.* at 10.  The Committee reviews these recommendations and reaches its own conclusion, which is not to be based upon the individual, but rather on the position itself.  (Doc. 32, pp. 26-27.)  Once the Committee reaches a decision, it is forwarded to Shelton State's president, who has complete and final approval authority with regard to reclassification.  (Doc. 29, p. 10; Doc. 32, p. 27.) Defendants state that the Committee does not recommend that an employee's position be reclassified unless the employee and her supervisor show that the position requires an increased level of responsibilities, including supervisory responsibilities.  (Doc. 29, p. 10.) As of 1999, the members of the Reclassification Committee included Karen Van

Luvender (Chairperson), Johnny Parker, Diane Layton, Andrea Parker, and Lori Cannon.  (Doc. 32, p. 26.)

Ms. Day requested a reclassification of her position to Clerk II, but Defendants contend that the request was denied because it was not demonstrated that her position required her to engage in an increased level of responsibilities.  (Doc. 29, at 10-11.)  In 2003, Plaintiff's supervisors sent letters to the Committee stating that in their opinion, Plaintiff's responsibilities had increased above the level of her current salary.  (Doc. 32, pp. 27-29.)  Defendants allege that in making its decisions concerning Ms. Day, it did not consider in any way conversations that she may have had with the F.B.I. or testimony she gave in any civil or criminal proceedings.[3]

_____

[3]Plaintiff has filed a Motion to Strike portions of the Declaration of Johnny Parker. (Doc. 34.)  In support of her motion, Plaintiff argues that portions of the declaration are inconsistent with Mr. Parker's deposition testimony and other portions are not supported by personal knowledge.

First, Paragraph 8 relates to a transfer that occurred prior to January 30, 2002, the cutoff date set by the statute of limitations.  Because the testimony concerns a claim that is barred by the statute of limitations, it is no longer relevant to this case, and, therefore, it is due to be stricken from the declaration.  Next, Plaintiff alleges that Paragraph 17 is inconsistent with Mr. Parker's deposition, but upon close review it is clear that the statements are not inconsistent at all.  If Plaintiff is not eligible for a pay increase through a promotion or based upon her years of experience, then it can still be true that "the only way she could receive a pay increase without being promoted to a different job in a different classification was if the state legislature approved a cost-of-living increase across-the-board for all public school employees."  Finally, Plaintiff alleges that Paragraphs 26 and 27 are due to be stricken because Mr. Parker does not

(Doc. 29, p. 11.)  They also state that the Committee has recommended that other Clerk I employees not be reclassified to Clerk II because they did not establish that their responsibilities had increased.  *Id.*

According to the defendants, Dr. Rogers' only involvement with employment decisions concerning Ms. Day was his adoption of the Reclassification Committee's decision.  *Id.*  They contend that he simply "rubber-stamped" the Committee's recommendations and did not know why it denied her request.  *Id.* at 12.  Defendants also state that Dr. Umphrey has not been involved in any way in employment decisions regarding Ms. Day or anyone else at Shelton State since his retirement in 2000.  *Id.*

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

have personal knowledge of the inner workings of the Reclassification Committee, but it is undisputed that Mr. Parker was, in fact, a member of the Committee.  Therefore, his statements are based upon personal knowledge, as he swears in the opening statements of his Declaration.

For these reasons, Plaintiff's Motion to Strike is due to be and hereby is granted in part and denied in part.  Paragraph 8 of Mr. Parker's declaration is to be stricken from the record, and it is not to be considered for the purposes of summary judgment.

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the

nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Discussion.

Defendants believe that summary judgment should be granted on each of Plaintiff's claims of retaliation for the following reasons: 1) most, if not all, of Plaintiff's claims are barred by the statute of limitations; 2) the individuals who allegedly engaged in the adverse employment actions are protected by qualified immunity; 3) Day's speech did not touch on a matter of public concern; 4) Plaintiff has not suffered any adverse employment action; 5) the twelve-year gap between her allegedly protected speech and the allegedly retaliatory action destroys any causal nexus between the two; and 6) Shelton State would have made the same decisions even in the absence of Plaintiff's speech.  (Doc. 29, pp. 1 & 15.)

A.    Statute of Limitations.

Ms. Day alleges that Defendants retaliated against her by reassigning her to positions which isolated her from the rest of campus and denied her requests for transfer, merit pay increases, requests for reclassification of

her position, and requests for adequate equipment and supplies. Defendants assert that the applicable two-year statute of limitations in Alabama bars Ms. Day from recovering for any allegedly adverse employment action that occurred prior to January 30, 2002.  (Doc. 29, p. 17.)

Alabama has set a two-year statute of limitations for personal injury actions, and for § 1983 claims, federal courts must first "look to state law to determine [] what statute of limitations is applicable. . . ."  *Dukes v. Smitherman*, 32 F.3d 535, 537 (11th Cir. 1994); Ala. Code § 6-2-38(l) (1993). *See also McIntire v. U.S.*, 884 F. Supp. 1529, 1531 (M.D. Ala. 1995) (applying Alabama's two-year statute of limitations to the plaintiff's § 1983 claim); *Gorman v. Wood,* 663 So. 2d 921, 922 (Ala. 1995) (affirming that "the only statute of limitations applicable to § 1983 claims in Alabama is the two-year statute of limitations in Ala. Code (1975) § 6-2-38(l)."); *Morrow v. Town of Littleville*, 576 So. 2d 210, 213 (Ala. 1991) ("[T]he only statute of limitations now applicable to a § 1983 claim filed in a court in Alabama, whether that court is a state court or a federal court, is the two-year statute of limitations set out in Ala. Code (1975) § 6-2-38(l).").

Plaintiff filed her complaint on January 30, 2004, which, according to Defendants, means that all of Plaintiff's claims regarding any allegedly retaliatory claims committed prior to January 30, 2002, are barred by the statute of limitations.  (Doc. 29, p. 17.)  Defendants argue that this means that all of Dr. Umphrey's actions are barred because he retired from Shelton State in 2000 and has not had any involvement with employment decisions since that time.  *Id.*  Due to his retirement, Defendants also point out that after 2000 Dr. Umphrey was no longer a state actor for the purposes of a § 1983 claim.  *Id.*

Ms. Day responds to Defendants' argument by alleging that she suffered retaliation continuously since her participation in the federal criminal investigation.  (Doc. 31, p. 5.)  She cites to the Eleventh Circuit decisions in *Clark v. Alabama*, 141 Fed. Appx. 777, 786 (11th Cir. 2005), and *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005), to support her contention that she suffered a "pattern of retaliatory activity" and not simply "isolated [retaliatory] events."  Plaintiff also relies on the holding in *Watson v. Blue Circle, Inc.,* 324 F.3d 1252, 1258 (11th Cir. 2003), for the proposition that "[t]he Eleventh Circuit has held that numerous allegations

of harassment constitute an allegation of one unlawful employment practice." (Doc. 31, p. 6.)

Day is not relying on the continuing violation doctrine.  Instead, she alleges that her claims are for a hostile work environment and the Court should apply the rule set out in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101(2002).  In *Morgan*, the Supreme Court "eschewed the use of the continuing violation doctrine in hostile work environment cases" and held that a hostile work environment constitutes one "unlawful employment practice," even though it may be comprised of a series of separate actions by the employer.  *Shields v. Fort James Corp.*, 305 F.3d 1280, 1281 (11th Cir. 2002).  By their very nature, hostile work environment claims differ from claims based upon discrete acts.  *See, e.g, Thomas v. Alabama Council on Human Relations, Inc.*, 248 F. Supp. 2d 1105, 1116 (M.D. Ala. 2003).  The *Morgan* Court distinguished between discrete acts of discrimination and claims involving a hostile work environment.   For example, hostile work environment claims require repeated conduct and "cannot be said to occur on any particular day." *Id.* at 103.  In fact, "a single act of harassment may not be actionable on its own." *Id*.  Therefore,

where the case involves discrete discriminatory or retaliatory acts, such as termination, failure to promote, denial of transfer, or refusal to hire, the cause of action accrues on the day that the alleged act took place. *Morgan*, 536 U.S. at 122. "Each such act starts a new clock for filing charges." *Thomas,* 248 F. Supp. 2d at 1115. For example, in *Williams v. Alabama Indus. Dev't Tr'g,* 146 F. Supp. 2d 1214, 1219 (M.D. Ala. 2001), the District Court held that in a Title VII case where the plaintiff alleges injury for the denial of promotions, he or she suffers an injury on each separate, definable occasion. "The acts [come] and [go]; only the consequences live on." *Id.*

In this case, Plaintiff suffered discrete, individual injuries each time she was reassigned or denied transfers, merit increases, and reclassification of her position. In her response brief, Ms. Day identifies at least six individual instances of discrimination that fall outside of the limitations period, but she claims that they are nonetheless actionable as part of a clear pattern of retaliatory activity. (Doc. 31, pp. 7-9.) After she cooperated with the FBI investigation in 1992, Ms. Day alleges that she was denied access to the college's computer system, CASTS. (Doc. 31, p. 7.) On August 31, 1992, Plaintiff was reassigned from Telecommunications to

Student Services.  *Id*.  On October 24, 1994, after two individuals were indicted in an FBI investigation in Waco, Texas, Ms. Day was again reassigned to International Students and Senior Adult Services.  *Id*.  After Dr. Freeman was indicted on August 27, 1995, Plaintiff was transferred to the Water Center in Moundville, Alabama.  *Id*.  Even though Ms. Day requested a transfer out of the Water Center, her request was not granted for several months.  *Id*.  Approximately one year later, on August 28, 1996, Ms. Day was reassigned to New Options and International Students, which are both located off campus and away from the rest of the college.  *Id*. at 8.  Plaintiff alleges that she was provided with a broken typewriter instead of a computer at the New Options location and with no equipment at all in the trailer for International Students.  *Id*.  In July or August of 1996, Plaintiff claims that she requested a computer from Dr. Melton, and he allegedly informed her that when he passed the request on to Dr. Umphrey his response was that there was "no way in hell" that Plaintiff would get any equipment and he was glad that she did not have any.  *Id*.  Plaintiff also states in her brief that other employees have successfully brought retaliation actions against Dr. Umphrey and Shelton State, but she fails to

explain how that assists her argument that her claims are not barred by the two-year statute of limitations.

Each of these actions constitute distinct, actionable injuries, and are not the type of wrongs the Supreme Court intended to include in a singular "unlawful employment practice" for a claim of hostile work environment. *Morgan*, 536 U.S. at 115.  Rather than a continuing pattern of harassment or continuous acts of hostility towards Ms. Day, the alleged instances in this case are individual causes of action.  If any of the above mentioned reassignments or hostile actions was the result of retaliatory actions taken by Defendants, each could have been the basis for a claim of retaliation by Ms. Day if it was filed in a timely manner.  Therefore, any actions by Defendants which form the basis of Plaintiff's claims that occurred prior to January 30, 2002, are barred by Alabama's two-year statute of limitations. This means that Defendants are entitled to summary judgment on each of Plaintiff's claims against Dr. Umphrey because all of his allegedly retaliatory actions must fall outside of the two-year window.  Ms. Day has not provided any evidence that Dr. Umphrey was involved in any employment decisions at Shelton State after his retirement.  (Doc. 30, Exhibit 7, pp. 112-13.)  The

only instances of alleged retaliatory conduct that occurred within the applicable statute of limitations are the denial of Plaintiff's salary increase in 2002 and the denial of her application for reclassification in 2003.  (Doc. 1.)

  B. First Amendment Retaliation.

  Plaintiff alleges that Defendants retaliated against her in violation of her First Amendment rights.  (Doc. 1.)  A public employee's right to free speech is not absolute; however, a state cannot retaliate against the employee for speech that is protected under the First Amendment.  *See Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1086 (11th Cir. 1996). To determine whether a state actor has retaliated against an employee for that employee's protected speech, the Eleventh Circuit employs a four-part test based upon the Supreme Court decision in *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563, 568 (1968). *See, e.g., McKinley v. Kaplan*, 262 F.3d 1146, 1149 (11th Cir. 2001); *Morris v. Crow*, 117 F.3d 449, 456 (11th Cir. 1997); *Watkins v. Bowden*, 105 F.3d 1344, 1352 (11th Cir. 1997).  First, the Court is to consider whether the employee's speech can be characterized as speech involving a matter of

public concern.  *Id.*  If it can, the Court then weighs the employees's First Amendment interests against the government's interest in promoting the efficiency of the public services which it performs through its employees.  *Id.*  If the employee prevails on this balancing test, the Court determines whether the speech played a substantial role in the government's decision to demote or discharge the employee.  *Id.*  Finally, if the employee is able to prove that the speech was a substantial motivating factor in the decision, the Court is to decide whether the government has shown by a preponderance of the evidence that it would have taken adverse action against the employee regardless of the protected conduct.  *Id.*  The first two prongs of the analysis mirror the two elements of the test set out in *Pickering*, 391 U.S. 563, and clarified in *Connick v. Myers*, 461 U.S. 138, 146 (1983), to determine whether an employee's speech is constitutionally protected.  Defendants do not believe that Ms. Day can satisfy this test.  (Doc. 29, p. 22.)

Plaintiff argues in her brief that there is both disputed and undisputed direct evidence of retaliation.  (Doc. 31, p. 15.)  The undisputed direct evidence that she offers are statements made by Dr. Umphrey in Dr. Rogers'

presence, such as "I don't want that bitch to have access to my information.

I don't want her to be hooked up to CASTS.  She caused enough trouble, and

I don't want her to be able to get any information.  Keep her away from

everything.  Isolate her."  *Id.* (citing Doc. 33, Exhibit 18, p. 5.)  While these

may be direct evidence of Dr. Umphrey's intention to retaliate, they do not

prove that either Shelton State or Dr. Rogers acted with retaliatory animus

towards Ms. Day.  She also cites to her own declaration as evidence that Dr.

Rogers made the statement to her supervisor that Dr. Rogers could not give

her a raise or he would lose his job.  (Doc. 33, Exhibit 7, p. 3.)  However,

Dr. Rogers disputes making this statement, and Ms. Day's declaration would

be inadmissible at trial as hearsay.  According to the declaration, Ms. Day

would testify that her supervisor told her that Dr. Rogers told him that if he

gave Ms. Day a raise Dr. Rogers would lose his job.  *Id.*  Even if the

statement by Dr. Rogers to Ms. Day's supervisor is admissible as an

admission, the statement from the supervisor to Ms. Day is still hearsay.

Such a statement does not rise to the level of direct evidence "that, if

believed by the jury" would be sufficient to win at trial" because it would

not be admissible.  *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th

Cir. 1997).  Therefore, summary judgment is still appropriate on Plaintiff's

First Amendment retaliation claim if Defendants can show that no genuine

issue of fact remains.

       1.    Matter of Public Concern.

Defendants contend that Ms. Day cannot establish that her deposition

testimony and discussions with F.B.I. agents constitutes speech on a matter

of public concern.  (Doc. 29, p. 22.)  In determining whether speech was

intended to raise issues of a public concern, the Court is to consider the

content, form, and context of the employee's statements, as well as the

employee's attempts to make the concerns public and the employee's

motivation in speaking.  *See Anderson v. Burke County, Georgia,* 239 F.3d

1216, 1219 (11th Cir. 2001) (quoting *Connick*, 461 U.S. at 141); *Maggio v.*

*Sipple*, 211 F.3d 1346, 1352 (11th Cir. 2000); *Watkins*, 105 F.3d at 1353.  To

involve a matter of public concern, a government employee's speech must

"relate to any matter of political, social, or other concern of the

community."  *Connick*, 461 U.S. at 146.

In *Maggio*, the Eleventh Circuit held that the Court "must discern

whether [the plaintiff] spoke primarily as a citizen on behalf of the public

or primarily as an employee upon matters of personal interest." 211 F.3d at 1352. According to the Court, "the relevant inquiry is 'whether the purpose of [the plaintiff's] speech was to raise issues of public concern . . . or to further her own private interest.'" *Id.* (quoting *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993)). Where the plaintiff's speech was motivated by her own rational self-interest in improving the conditions of her employment, and it focused primarily on her supervisor's behavior and its effect on her work and did not in any way draw the public at large into the picture, the speech is not a matter of public concern. *Id.* Additionally, the Court held that the employee's speech did not concern the public because it was in the form of testimony on behalf of her supervisor at a hearing relating to a grievance her supervisor filed after being charged with insubordination. *Id. See also Morris*, 142 F.3d at 1382-83 (affirming summary judgment for the defendants on a First Amendment speech claim where the plaintiff's investigative report and deposition testimony in a civil suit that police officers violated police policy did not rise to the level of public concern); *Morgan*, 6 F.3d at 754-55 (affirming summary judgment for the defendants on a § 1983 claim where the employee's speech to a

superintendent concerning sexual harassment voiced a private grievance and was not a public concern); and *Pearson v. Macon-Bibb County Hosp. Auth.*, 952 F.2d 1274, 1279 (11th Cir. 1992) (affirming summary judgment for the defendant on a First Amendment speech claim where the plaintiff's comments to a supervisor concerning the cleanliness of operating rooms at a public hospital did not rise to the level of public concern).

Ms. Day was not voicing internal complaints to her supervisor when she provided deposition testimony in the 1992 civil suit and spoke with the F.B.I. in the early 1990's.  She was not lodging private complaints to a supervisor concerning the behavior of her colleagues or her work environment.  *Cf. Watkins*, 105 F.3d at 1353.  Hers was not speech that was self-serving in nature, and it certainly was not an employee grievance like two of the cases cited by Defendants.  Plaintiff correctly notes that her speech is more akin to the speech in *Cooper*, where the employee cooperated with the Georgia Bureau of Investigation in its inquiry into charges of corruption.  89 F.3d at 764-65.  The Court recognized that "[c]learly, the law does not discourage public employees from cooperating with law enforcement in investigations of unlawful activities within their respective governmental organizations."

*Id.*  Like the employee in *Cooper*, Ms. Day was cooperating with a criminal investigation, which is "one of those extraordinary case[s] in which the First Amendment conclusion would inevitably favor [the plaintiff] in light of *Pickering* balancing."  *Cooper*, 89 F.3d at 765 (quoting  *Hansen v. Soldenwagner*, 19 F.3d 573, 578 (11th Cir. 1994)) (internal quotations omitted).  Therefore, Ms. Day's speech involved a matter of public concern.

2.    *Pickering* Balancing Test.

Under *Pickering* and the Eleventh Circuit's test, a plaintiff must show that her First Amendment interests, as a citizen, in commenting upon matters of public concern outweigh the interests of the state, as an employer, in promoting the efficiency of the public services that it performs through its employees.  *Anderson*, 239 F.3d at 1219 (citing *Pickering*, 391 U.S. 563).  A plaintiff is not entitled to First Amendment protection where her speech "so severely impeded [her] own effectiveness and the effectiveness of [her employer] that the governmental interest at stake in [the] case . . . clearly outweighed [the plaintiff's] speech interest."  *Tindal v. Montgomery County Com'n,* 32 F.3d 1535, 1540 (11th Cir. 1994) (quoting

*Morales v. Stierheim*, 848 F.2d 1145, 1151 (11th Cir. 1988), *cert. denied*, 489 U.S. 1013 (1989)).

Defendants fail to address the balancing test at all in their briefs, and Plaintiff correctly points out that they have proffered no evidence indicating that Ms. Day's speech inhibited either her work or the work of other employees of Shelton State.  (Docs. 29 & 35.)  As the Court noted in the previous section, cooperation with law enforcement investigations is one of those cases where the First Amendment balancing test under *Pickering* would favor protection of the plaintiff's First Amendment rights.  *See Cooper*, 89 F.3d at 765; *Hansen*, 19 F.3d at 578.

> 3.   Government's Decision to Take Adverse Employment Action.

If a plaintiff establishes that her speech was a matter of public concern and that the balancing test has been met, she must then provide evidence that she suffered an adverse employment action and that her speech played a role in, or was a cause of the adverse action.  Because the Court finds that the statute of limitations bars Plaintiff's claims that occurred prior to January 30, 2002, Plaintiff alleges that two adverse

employment actions were taken against her.  In her response brief, she identifies these two actions as a denial of a pay increase in 2002 and the denial of a job reclassification that would have resulted in higher pay in 2003.  (Doc. 31, p. 22.)

In a First Amendment retaliation case, an adverse employment action must involve some important condition of employment, and the Eleventh Circuit has stated the standard as follows: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005).  *See also Stavropoulos v. Firestone*, 361 F.3d 610, 619 (11th Cir. 2004).  In *Stavropoulos*, the Court listed examples of important conditions of employment, including discharges, demotions, refusals to hire or promote, and reprimands. *Stavropoulos*, 361 F.3d at 619 (citing *Goffer v. Marbury*, 956 F.2d 1045, 1049 n. 1 (11th Cir. 1992)).  The Eleventh Circuit refused to follow the dicta in *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 n. 8 (1990), which held that even something as trivial as refusing to hold a birthday party for a public employee could be actionable as an act of retaliation when it is

intended to punish her for exercising her free speech rights.   A public employee claiming that she is the victim of First Amendment retaliation "must show more than her subjective belief that the employer's action was likely to chill her speech: she must show that the action had an impact on an important aspect of her employment."  *Id*. at 620.

Plaintiff has provided two instances of allegedly adverse employment action that occurred within the statute of limitations period, but only one of them meets the standard for an "adverse" action.  (Doc. 31, p. 22.)  First, Ms. Day contends that she did not receive a pay increase in 2002, but the defendants have provided the affidavit of Johnny Parker, the current Director of Personnel Services for Shelton State, and a copy of Ms. Day's 2002 employment contract, which show that on September 1, 2002, Plaintiff received a cost-of-living increase, taking her salary from $27,950.00 to $28,790.00.  (Doc. 30, Exhibit 1, pp. 5-6; Exhibit 3, 2002 Contract.)  Second, Ms. Day alleges that she was the victim of retaliation when she was denied reclassification to a higher level that would have resulted in a pay increase in 2003.  (Doc. 31, p. 22.)  The denial of a reclassification that would lead to higher pay would be tantamount to a denial of promotion.  Even though

Ms. Day's employment situation remained the same, Shelton State's refusal to reclassify her job involves an important condition of employment: salary. Therefore, the 2003 denial of job reclassification constitutes an adverse employment action.

However, adverse employment action alone is not enough.  A plaintiff must take the additional step of establishing that the decision to take such action was a result of the exercise of her First Amendment rights. Defendants contend that the lack of temporal proximity between Ms. Day's speech and any alleged adverse employment action destroys any causal relationship between the two.  (Doc. 29, p. 27.)

Plaintiff notes that the Eleventh Circuit has held that "gaps of time, standing alone, do not preclude [a plaintiff] from producing enough evidence for a reasonable jury to conclude that protected speech was a substantial factor" in the decision.  *Stanley v. City of Dalton, Ga.,* 219 F.3d 1280, 1291 (11th Cir. 2000) (internal quotations omitted).  A plaintiff is not precluded from producing other evidence to support causation.  *Id.* at 1292. However, the Court has also held that as little as fifteen months between the exercise of protected activity and an adverse employment action is

enough to destroy the element of causation.  *See Maniccia v. Brown*, 171
F.3d 1364, 1370 (11th Cir. 1999).  Ms. Day's last exercise of her First
Amendment rights relevant to this case was in 1997, the last time that she
claims to have spoken with the F.B.I.  Approximately six years later, her
application for job reclassification was denied.  During that period of time,
the president of Shelton State, Dr. Umphrey, retired and was replaced by
Dr. Rogers.  As further evidence of causation, Plaintiff merely states that
"there is direct evidence of retaliatory motive in this case." (Doc. 31, p.
24.)  She also makes the statement that this is not the only example of
Defendants engaging in retaliatory harassment towards employees who
cooperated with law enforcement investigations, but the instances to which
she cites are examples of harassment by Dr. Umphrey against Dr. Ted Spring
and not by Dr. Rogers, the acting president at the time of the denial of
reclassification.  *Id*.  She does not provide any specific evidence that links
the 2003 denial of job reclassification to her protected First Amendment
activities in the 1990's.

Defendants also argue that they did not retaliate against Ms. Day
because they did not know the content of her speech.  As evidence of that

assertion, Defendants state that neither Dr. Umphrey nor Dr. Rogers was present at Plaintiff's deposition in the Drake State case, no defendant was a party to that case, Dr. Rogers did not discuss the deposition with Ms. Day when he gave her a ride to the location, Dr. Umphrey did not know Plaintiff was deposed in the case against Dr. Freeman, neither Dr. Umphrey nor Dr. Rogers knew the substance of Ms. Day's testimony until she filed this lawsuit twelve years later, Ms. Day never revealed the content of her discussions with the F.B.I. to any employee at Shelton State, and Dr. Umphrey and Dr. Rogers did not know the content of Plaintiff's discussions with the F.B.I. (Doc. 29, pp. 29-30.)  The reason Defendants give for the denial of Ms. Day's application for reclassification is that no one ever demonstrated that her position required her to engage in an increased level of responsibilities.

Since two witnesses testified that the reclassification was denied because her level of responsibility had not changed and that is different from saying that "no one" demonstrated that her responsibility had changed, Plaintiff argues that this is evidence of pretext.  (Doc. 31, p. 26.) Despite Plaintiff's best arguments to the contrary, this semantic argument is not evidence of pretext because it does not show that the defendants'

reasons have changed over time.  *Cf. Fikes v. City of Daphne*, 79 F.3d 1079, 1085 (11th Cir. 1996) (holding that the fact that the City cited different reasons for the plaintiff's discharge in the notice and hearing created an issue of fact as to whether his speech played a "substantial part" in the City's decision to fire him). The reason Defendants give for denying the reclassification is that Plaintiff's responsibilities had not increased to the level of the position which she sought.  Their reason does not rely on whether two people or no one at all believed this to be true.

In response, Ms. Day cites to the testimony of her supervisors that her duties changed since she first took the job.  (Doc. 31, pp. 26-27.)  While this is evidence that her immediate supervisors believed that her duties had changed, it does not lead to the conclusion that the Reclassification Committee denied Ms. Day's application in an effort to retaliate against her for her protected activities.  The Committee considered the letters from her supervisors, but it was not bound to follow them.

Defendants contend that the Reclassification Committee is the entity that decides whether a job requires reclassification, and the president of Shelton State merely "rubber stamps" their decision.  Plaintiff points out

that it is undisputed that the president has complete and final approval authority with regard to reclassification of employees, and defendant Rogers was president at the time of the 2003 denial.  (Doc. 31, p. 28.)  However, the fact that Dr. Rogers was responsible for making the ultimate decision does not mean that he retaliated against Ms. Day when he approved the decision of the Reclassification Committee.   Plaintiff's statement that Defendant Umphrey expressed his retaliatory animus towards Ms. Day to Dr. Rogers and that Dr. Rogers felt threatened if he acted favorably to Ms. Day is simply unsupported by the record.  The only evidence in support of this assertion is Ms. Day's own declaration, and it is curious that Dr. Rogers would feel threatened by Dr. Umphrey because Dr. Umphrey was retired and presumably no longer had the ability to terminate Dr. Rogers' employment. (Doc. 33, Exhibit 7.)  There is no evidence that Dr. Umphrey had the ability to either influence or determine whether Dr. Rogers remained employed by Shelton State.  Therefore, no genuine issue of fact exists as to whether Dr. Rogers, or Shelton State, took adverse employment action against Ms. Day in retaliation for her speech.

For these reasons, and the fact that at least six years elapsed between the final discussions with the F.B.I. and the denial of the reclassification in 2003, the Court finds that Ms. Day's cooperation with the F.B.I. and her deposition testimony did not play a role in Dr. Rogers and Shelton State's decision to deny her job reclassification.

4.     Legitimate, Nondiscriminatory Reasons for the Action.

Even if Plaintiff could establish that her speech was a motivating factor in Shelton State and Dr. Rogers' decision to deny the reclassification, Defendants have established by a preponderance of the evidence that they would have taken the same action regardless of the protected conduct. *See McKinley*, 262 F.3d at 1149; *Stanley*, 219 F.3d at 1292-93; *Harris*, 99 F.3d at 1086 (affirming summary judgment on First Amendment retaliation claim because the employer proved that it would have made the same decision even in the absence of protected speech).

Defendants rely on the affidavits and deposition testimony of Johnny Parker, as well as the deposition testimony of Karen Van Luvender for the assertion that the Reclassification Committee only recommends that employees be reclassified if both the employee and her supervisors can show

that her position requires an increase in responsibilities, including supervisory responsibilities.  (Doc. 29, p. 33.)  Based upon the testimony of the same individuals, the defendants allege that when recommended for reclassification no one ever demonstrated that Ms. Day's position required her to engage in more responsibilities than before.  *Id.* (Doc. 35, p. 9.) Therefore, they testified that the Committee did not reclassify her position and would not have reclassified it even in the absence of Ms. Day's speech. *Id.*  They also allege that any conversations Ms. Day had with the F.B.I., as well as her deposition testimony, "never came up in committee meetings and did not factor in any way into the committee's decisions."  *Id.* at 34. (Doc. 35, p. 10.)

Plaintiff's response to the defendants' reason for the decision reads in its entirety that "[a]s Plaintiff has shown, this reason is false and pretextual."  (Doc. 31, p. 30.)  Even though Plaintiff states that Ms. Day's supervisors wrote letters to the Committee stating that in their opinion her responsibilities have increased, Defendants note that "mere increases in responsibility (i.e., amount of work) do not equate to an *increased level of responsibility* as required to justify reclassification."   (Doc. 35, p. 9.)

Defendants also point out that Plaintiff's own evidence supports the findings of the Committee that even Ms. Day's "increased" responsibilities do not rise to the level of the position to which she sought reclassification.  (Doc. 33, Exhibit 2, pp. 40-45, 46-54; Doc. 33, Exhibit 21; Doc. 35, p. 9.)

For these reasons the Court finds that even if Ms. Day could prove that the adverse employment action was taken in retaliation for her protected speech, Shelton State has provided evidence that it would have made the same decision even in the absence of her First Amendment activities.

For the reasons stated in the paragraphs above, Defendants are entitled to summary judgment on Plaintiff's claims of First Amendment Retaliation.

C.    Qualified Immunity.

Defendants argue that even if some, if not all, of Plaintiff's claims are not barred by the statute of limitations, the doctrine of qualified immunity shields Dr. Umphrey and Dr. Rogers from any potential liability.  Section 1983 does not create federal rights; it simply provides a mechanism to enforce rights established by other sources of federal law.  Because summary judgment is due to be granted on Plaintiff's First Amendment

retaliation claim, it is not necessary to decide whether Plaintiff's claims under § 1983 are meritorious.[4]

> D.   Violations of Equal Protection and Due Process Under the Fourteenth Amendment.

Count II of Plaintiff's Complaint alleges a violation of her Equal Protection and Due Process rights guaranteed by the Fourteenth Amendment.  (Doc. 1.)  However, as Defendants point out, a retaliation claim that does not link the adverse employment action to gender or race "simply does not implicate the Equal Protection Clause." *Watkins*, 105 F.3d at 1354 (citing *Thompson v. City of Starkville*, 901 F.2d 456, 468 (5th Cir. 1990)) (holding that "[t]o the extent [a plaintiff] contends that she was dismissed because of her expressive activity, that claim arises under the First Amendment.").[5]  (Doc. 29, p. 22 n. 5.)  Since Ms. Day has not alleged

---

[4]The § 1983 claim against Shelton State is not valid because the school is an arm of the state.  Retaliation claims under § 1983 are sustainable only against individual defendants.  *See Stavropoulos*, 361 F.3d at 616 n. 5.  Therefore, the only actionable claim against Shelton State is for First Amendment retaliation, and the Court has held above that there is no genuine issue of fact as to that claim and Defendants are entitled to summary judgment.

[5]Defendants note that Ms. Day must have realized that her Equal Protection and Due process claims under the Fourteenth Amendment were unsustainable because her position in the Joint Status Report omits any reference to the claims.  Plaintiff also fails to refer to the claims or rebut the argument of the defendants in her reply brief.

retaliation based upon her race or gender, her claims under the Fourteenth Amendment are due to be dismissed.

V.    Conclusion.

For the reasons stated above, Defendants' Motion for Summary Judgment is due to be granted.  A separate order in conformity with this opinion will be entered.

Done this <u>10th</u> day of <u>January 2006</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153